Michael G. Barer
BARER LAW OFFICES
#18 Sixth Street North, Suite 200
Great Falls, Montana  59401
Telephone:  (406) 771-8800
Facsimile:  (406) 771-7227

Randy K. Dix
RANDY K. DIX LAW OFFICE
80 South Warren
Helena, MT 59601
Telephone: (406) 443-4667
Facsimile: (406) 443-4669

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

---

| | |
|---|---|
| MEMORY HEISEL, individually and as Personal Representative of the estate of HOWARD H. LITTLE DOG; LUCRETIA LITTLE DOG, ALICIA LITTLE DOG, and JUSTIN LITTLE DOG, minors, by and through their natural mother, MEMORY HEISEL, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, RICHARD A. ODEGAARD, M.D., and JOHN DOES I - V, <br><br> Defendants. | Cause No.  CV-07-042-GF-SEH <br><br> COMPLAINT |

COME NOW, Plaintiffs, identified above, by their undersigned counsel of record, and for their claims against the Defendants, they allege as follows:

**JURISDICTION AND VENUE**

1.     This matter arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. This Court is vested with jurisdiction in accordance with 28 U.S.C. § 1346(b). Venue is proper under 28 U.S.C. §1402(b).

**THE PARTIES**

2.     The Last Will and Testament of Howard H. Little Dog (hereinafter "Estate") was admitted to probate and Memory Heisel was appointed as Personal Representative on January 13, 2005, in the Montana Ninth Judicial District, Glacier County, Cause No. DP-06-3. Please see "Letters" attached hereto as Exhibit "A".

3.     The Plaintiffs, Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, are the natural children of Howard H. Little Dog and Memory Heisel.

4.     The Defendant, United States of America, (hereinafter "United States") funds and operates a health facility, known as the Blackfeet Community Hospital, located in Browning, Glacier County, Montana, and within the exterior boundaries of the Blackfeet Indian Reservation. It is part of the Indian Health Service.

5.     Defendants John Does I-V are persons or firms each of whom owed a duty of care to Howard H. Little Dog at all times relevant to this Complaint.

6.     This is a claim of medical/hospital negligence against Blackfeet Community Hospital in Browning, Montana and Richard A. Odegaard, M.D., a physician who was employed by and acting within the scope and course of his employment at this hospital at the time of the

2

acts, errors and omissions hereinafter set forth.

7.      It is believed that at all times material to this claim, Dr. Odegaard is and has been a board-certified family medicine physician who has, among other things, staffed the Emergency Room of Blackfeet Community Hospital. It is believed that this hospital was and is operated and funded by the federal Indian Health Service.

8.      Memory Heisel is Howard Little Dog's common-law wife of 14 years and the mother of his three surviving children: Lucretia Little Dog (age 14), Alicia Little Dog (age 11) and Justin Little Dog (age 10).

9.      Mr. Little Dog, decedent, was an enrolled member of the Blackfeet Tribe. As such, he was entitled to and did receive medical care over the course of his life from the Indian Health Service. At the time of his death on October 25, 2004, Mr. Little Dog was 33 years of age.

## **FACTS**

10.     This claim arises from the failure of Blackfeet Community Hospital and its employee, Dr. Richard Odegaard, to reasonably suspect that when Howard Little Dog presented to the Emergency Room of this hospital on October 25, 2004 for the third time in less than 24 hours, he had signs, symptoms and laboratory values consistent with an acute intra-abdominal process that had already demonstrated peritonitis, sepsis and, if untreated, would lead to multi-system organ failure and death.

11.     Following this third presentation on October 25, 2004, Mr. Little Dog was admitted to Blackfeet Community Hospital where he remained under the care of Dr. Odegaard virtually the entire day rather than being transported to a facility that had appropriate imaging equipment to facilitate a diagnosis and competent physicians to manage this patient medically

and surgically. On admission and throughout the entire day, Mr. Little Dog was severely leukopenic, tachypneic, became intermittently hypotensive, had minimal urine output despite fluid support and experienced severe abdominal pain.

12. By the time transport was belatedly arranged for Mr. Little Dog, he was so systemically unstable that he did not survive to reach Great Falls, Montana. He died en route during ambulance transport. Post-mortem autopsy was performed two days following his demise. It revealed the cause of death to be "acute peritonitis secondary to sigmoid colon diverticular abscess," which had developed as a result of an unrecognized and untreated diverticular rupture.

13. Mr. Little Dog had received medical care at the Blackfeet Community Hospital since he was a young child. His mother, Mary Louise Little Dog has worked at the Blackfeet Community Hospital as a nurse for a number of years. It was the facility that Mr. Little Dog considered both his primary and acute care provider.

14. Mr. Little Dog was treated at Blackfeet Community Hospital for normal childhood illnesses and minor traumatic events occurring during childhood and adolescence. He continued to treat at this facility for adult illnesses that ranges from upper respiratory infections to transient renal dysfunction to esophagitis.

15. On July 25, 2000, Mr. Little Dog was seen at this hospital for complaints of epigastric pain, abdominal cramping, fatigue, flatus and bloating which had apparently started several days before this visit. He was diagnosed presumptively with irritable bowel and esophagitis and given both Zantac (an antacid) and Metamucil. It does not appear that any objective workup for these complaints was undertaken at that time or later.

16. On October 24, 2004, at 8:42 a.m., Mr. Little Dog came to the Emergency Room

at Blackfeet Community Hospital with complaints of "vomiting, abdominal pain, nausea x 2 days." At that time, he complained about body aches, fever and chills of two days duration. During initial triage, it was determined that he was afebrile, his pulse was 100, respiratory rate 20 and his blood pressure 147/80. On examination by the attending physician, Dr. Harry Etter, his abdomen was characterized as soft and nontender. Accordingly, the diagnosis of gastroenteritis was entered into the chart. Mr. Little Dog was given Zantac and Phenergan and he was discharged home.

17. At approximately 12:20 a.m. that night, Mr. Little Dog returned to the Emergency Room of this hospital with complaints of "flu symptoms all day." It appears from the chart that his vital signs were essentially within normal limits at that time. He reported that he continued to have "dry heaves" and that he was having lower abdominal discomfort and felt constipated. He remained in the hospital during the early morning hours of October 25, 2004 until he could be evaluated by another staff physician, who noted that Mr. Little Dog still had chills, nausea, vomiting and abdominal pain.

18. On abdominal examination by this staff physician, it was revealed that Mr. Little Dog had diffuse tenderness but active bowel sounds without rebound. This physician persisted in the diagnosis of gastroenteritis, continued the same medical management as initiated the previous morning and discharged Mr. Little Dog home at 2:15 a.m. with "GE instructions" to be "rechecked in 48 hours if his symptoms did not resolve, sooner p.r.n."

19. Mr. Little Dog returned to the Emergency Room of this hospital approximately six hours later with persistent complaints of lower abdominal pain and dry heaves. At that time, he came under the care of Dr. Richard Odegaard. Notably, on initial evaluation at 8:40 a.m., he was profoundly hypotensive with a documented blood pressure of *77/66.* The initial nursing

assessment performed at the time of first presentation establishes that the patient had "10/10 RLQ [right lower quadrant] pain, [was] very restless, ashen in color with diaphoresis. Sick x 2 days." His pulse was, remarkably, 144. Even more astoundingly, his white blood count on admission on CBC was 48.9. He had 32 bands and neutrophils of 78.

20. When Dr. Richard Odegaard initially assessed Mr. Little Dog, he could not find any detectable blood pressure or radial pulse. Hence, he was given intravenous fluid support and a broad spectrum antibiotic, Rocephin.

21. With a three-day history of increasingly severe abdominal pain, nausea, vomiting, fever, chills and admitting laboratory values as described above as well as markedly abnormal vital signs on admission to the hospital on the morning of October 25, 2004, Dr. Richard Odegaard inappropriately concluded that Mr. Little Dog was suffering only from hypotension and dehydration rather than presumptive abdominal sepsis of undetermined origin which required immediate transfer to another facility for appropriate radiologic studies and, if necessary, emergent surgical exploration. This should have occurred at the time Mr. Little Dog was initially evaluated by Dr. Odegaard that morning.

22. While it is undocumented in the hospital chart, at sometime during that morning, on October 25, 2004, Dr. Richard Odegaard did suggest to Mr. Little Dog and his wife, Memory, that he be transferred to the hospital in Great Falls, Montana. Dr. Odegaard did not advise this patient or his wife that he had a potentially lethal condition which, if untreated, could lead to his rapid deterioration and demise. Dr. Odegaard did not advise Mr. Little Dog or his wife that, in his opinion, he had likely developed peritonitis, abdominal sepsis or even that he had any intra-abdominal process in progress. He did not advise this patient or his wife that Mr. Little Dog required emergency or urgent evaluation of his abdomen by a surgeon.

23. With this lack of vital information due to Dr. Richard Odegaard's failure to include abdominal sepsis in his differential diagnosis, Mr. Little Dog decided to remain at the hospital in Browning, Montana that day.  At the time this decision was made, Mr. Little Dog was so acutely and severely ill that it is highly unlikely it was made in an informed, knowing and consensual manner.  This decision was made with Dr. Odegaard's acquiescence and approval inasmuch as he failed to document that the decision was made either AMA (against medical advice) or otherwise in contravention of Dr. Richard Odegaard.  Indeed, the only chart entry relating to this event appears on the Clinical Record wherein Dr. Odegaard states: "**pt wished to stay at Browning.**"

24. A plain abdominal x-ray was taken at 10:03 a.m.  The indication for this film was "severe abdominal pain."  It did not reveal ileus or obstruction.  However, this imaging study is obviously not diagnostic for other abdominal processes such as, for example, acute appendicitis or diverticulitis.  Those diagnoses are made surgically on the basis of compelling clinical and laboratory findings such as existed in this case, as well as abdominal CT scan, the results of which would have warranted immediate exploratory laparotomy.

25. Serial nursing assessments during the day demonstrated that Mr. Little Dog continued to be hypotensive even with IV fluids, that his pulses and respiratory rates were elevated and that his urine output was very minimal.

26. At 1:20 p.m., the Nursing Patient Care Note charted by RN M. Gordon states that Mr. Little Dog fell in the radiology suite and felt like he was going to "pass out."  Even on 2 liters of oxygen per nasal cannula, Mr. Little Dog was desaturating at 89-93%.

27. The above information was promptly communicated to Dr. Richard Odegaard.  Ten minutes earlier, he had seen Mr. Little Dog, but it does not appear that he even performed

7

another physical examination at that time, not even a focused examination of his patient's abdomen.

28.     Dr. Richard Odegaard again saw Mr. Little Dog at 2:20 p.m. His Progress Note of that visit mentions no physical examination findings, no reference to the patient's subjective abdominal pain complaints but it does establish no urine output for 2 hours. It did not apparently occur to Dr. Richard Odegaard that at this point his patient was suffering from renal shut-down secondary to fulminant abdominal infection.

29.     In the face of this deterioration, no repeat STAT CBC's were ordered. Dr. Odegaard simply entered orders to continue rehydration with lactated ringers. Between noon and 6:30 p.m., Mr. Little Dog only voided approximately 160 cc's of urine, despite fluid infusion at the rate of 200 cc's per hour.

30.     At 7:00 p.m. on October 25, 2004, Mr. Little Dog fell in the shower. His blood pressure was now 68/36. His respiratory rate was documented to be 52, which is profoundly elevated. He was in hypotensive shock. At this late stage, Dr. Odegaard made the decision to transfer Mr. Little Dog to Benefis Healthcare in Great Falls, Montana by ground transport.

31.     At 7:50 p.m. on October 25, 2004, Dr. Odegaard made an entry in his Progress Record stating that Mr. Little Dog was "alert but feeling poorly; will arrange transport to Great Falls." Even at this point, Dr. Odegaard's assessment only included hypotension and severe dehydration.

32.     Continuing IV fluid support was to no avail over the next hour or so. Mr. Little Dog remained tachycardic, his respiratory rates were markedly elevated and he became increasingly agitated.

33.     Ambulance transport arrived in Browning at 9:10 p.m., at which point transfer

was initiated with the intention of bringing Mr. Little Dog to Benefis Hospital in Great Falls, Montana.  This is a distance of approximately 140 miles.  His wife, Memory, rode with him and EMS personnel in the ambulance.

34.	Approximately one half hour later, while transport was in progress, Mr. Little Dog arrested in the ambulance.  Intubation was performed and emergency resuscitative efforts were initiated but they were unsuccessful.  After becoming understandably combative in the ambulance as he was struggling for his life, Mr. Little Dog became obtunded.  He was asystole, pulseless and apneic.

35.	Mr. Little Dog arrived at the Pondera Medical Center in Conrad, Montana in full code status at approximately 10:40 p.m.  CPR was continued there by Dr. J.P. Dodge but it was too late.  Mr. Little Dog was pronounced dead at 10:58 p.m. due to "septic shock."

36.	A copy of the Death Certificate dated November 10, 2004, certified by Dr. Odegaard as stating the cause of death to be "pertonitis" {sic} due to "ruptured diverticulum" is attached as Exhibit "B".

37.	A copy of the Autopsy Report dated November 3, 2004 is attached as Exhibit "C".  Post-mortem examination was performed the day following Mr. Little Dog's demise.

38.	The Defendant, United States, by and through its employee and agent, Dr. Richard Odegaard, owed Mr. Little Dog a duty to use the same care and skill ordinarily exercised in like cases by other qualified doctors practicing in the same field of medicine and under the same circumstances.

39.	The Defendant, United States, by and through its employee and agent, Dr. Richard Odegaard, was negligent in his treatment of Mr. Little Dog, and thereby caused Howard Little Dog to suffer severe personal injury, medical expenses, loss of income, mental anguish,

9

emotional distress, pain, suffering, and death.

40. The health care providers who rendered care to Mr. Little Dog during his third hospital visit in 24 hours and only during his admission of October 25, 2004, violated accepted standards of care that govern the management of patients in the emergency room setting in the following manner:

a. They failed to develop and maintain a reasonably high index of suspicion that Mr. Little Dog's 3 day history as well as his presenting clinical signs and symptoms and laboratory values were compatible with an intra-abdominal process that could rapidly deteriorate;

b. Accordingly, they failed to entertain or even include this potential etiology in the differential diagnosis;

c. They further failed to entertain this potential etiology after admission and during the day of October 25, 2004 when Mr. Little Dog did not respond to antibiotic therapy or intravenous fluid support;

d. As a result, they did not inform Mr. Little Dog and his family or otherwise lead them to believe that he could be suffering from a possibly life-threatening disease which required emergency evacuation from the hospital in Browning because it lacked the physician personnel and radiologic equipment to appropriately diagnose and treat his condition;

e. To his detriment, the retention of Mr. Little Dog at the Blackfeet Community Hospital and their continuation of a treatment plan that only included hypotension and dehydration, offered misleading reassurance to Mr. Little Dog and his family that it was acceptable and appropriate for him to remain at the Blackfeet Community Hospital rather than be transferred elsewhere;

f. Consequently, Mr. Little Dog and his wife were deprived of the opportunity to exercise anything resembling informed consent when they made the decision to remain in Browning;

g. As a proximate result of the negligent errors, acts and omissions on the part of these health care providers, Mr. Little Dog's condition was allowed to deteriorate and become fatally unstable by the time it was belatedly determined that he should be transported to Great Falls, Montana.

41. Howard Little Dog's death, caused by Defendant United States as aforesaid,

resulted in the loss of parental consortium, comfort, society, guidance, education, care, protection and companionship to his children, including Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, who are all minors, resulting in severe grief, sorrow, and mental anguish.

42. Howard Little Dog's death, caused by Defendant United States as aforesaid, resulted in loss of comfort and society damages to his three minor children, Lucretia Little Dog, Alicia Little Dog and Justin Little Dog.

43. Howard Little Dog's injuries caused by the Defendant United States as aforesaid, resulted in the negligent infliction of emotional distress claim to his three minor children, Lucretia Little Dog, Alicia Little Dog and Justin Little Dog.

44. An Administrative Claim for relief has been filed by Plaintiffs with three appropriate Federal Agencies in a timely manner under the Federal Tort Claims Act, 28 U.S.C. § 2675(a), on September 8, 11 and 13, 2006. It has been six (6) months since this matter was filed with the appropriate agency and no response has been received from them.

45. Upon information and belief, John Does I-V and/or persons for whom they were responsible, had duties to use reasonable care to furnish Howard Little Dog with proper medical care and treatment, and may have failed to do so, causing damage to Howard Little Dog, Memory Heisel, Lucretia Little Dog, Alicia Little Dog, Justin Little Dog.

## CAUSES OF ACTION

(Each cause of action herein specifically incorporates, by reference, all paragraphs previously set forth.)

### COUNT I
### SURVIVAL ACTION
### FIRST CAUSE OF ACTION

46. This is a cause of action by the Plaintiff, Memory Heisel, as Personal

11

Representative of the Estate of Howard Little Dog against the Defendant United States for negligence resulting in personal damages to Howard Little Dog.

## SECOND CAUSE OF ACTION

47.     This is a cause of action by the Plaintiff, Memory Heisel, as Personal Representative of the Estate of Howard Little Dog against the Defendants Richard A. Odegaard, M.D. for negligence resulting in personal damages to Howard Little Dog.

## THIRD CAUSE OF ACTION

48.     This is a cause of action by the Plaintiff, Memory Heisel, as Personal Representative of the Estate of Howard Little Dog against the Defendants John Does I-V for negligence resulting in personal damages to Howard Little Dog.

## COUNT II
## LOSS OF CONSORTIUM
## FOURTH CAUSE OF ACTION

49.     This is a cause of action by the Plaintiff Memory Heisel, against the Defendant United States for negligence resulting in the loss of consortium.

## FIFTH CAUSE OF ACTION

50.     This is a cause of action by the Plaintiff Memory Heisel, against the Defendant Richard A. Odegaard, M.D. for negligence resulting in the loss of consortium.

## SIXTH CAUSE OF ACTION

51.     This is a cause of action by the Plaintiff Memory Heisel, against the Defendant John Does I-V for negligence resulting in the loss of consortium.

## SEVENTH CAUSE OF ACTION

52.     This is a cause of action by the Plaintiffs Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, by and through their natural mother, Memory Heisel, against the

Defendant United States for negligence resulting in the loss of parental consortium.

## EIGHTH CAUSE OF ACTION

51. This is a cause of action by the Plaintiffs Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, by and through their natural mother, Memory Heisel, against the Defendant Richard A. Odegaard, M.D., for negligence resulting in the loss of parental consortium.

## NINTH CAUSE OF ACTION

52. This is a cause of action by the Plaintiffs Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, by and through their natural mother, Memory Heisel, against the Defendants John Does I-V for negligence resulting in the loss of parental consortium.

## COUNT III
## WRONGFUL DEATH
## TENTH CAUSE OF ACTION

53. This is a cause of action by the Plaintiff Memory Heisel as Personal Representative of the Estate of Howard Little Dog against the Defendant United States for negligence resulting in the wrongful death of Howard Little Dog.

## ELEVENTH CAUSE OF ACTION

54. This is a cause of action by the Plaintiff Memory Heisel as Personal Representative of the Estate of Howard Little Dog against the Defendant Richard A. Odegaard, M.D. for negligence resulting in the wrongful death of Howard Little Dog.

## TWELFTH CAUSE OF ACTION

55. This is a cause of action by the Plaintiff Memory Heisel as Personal Representative of the Estate of Howard Little Dog against the Defendants John Does I-V for negligence resulting in the wrongful death of Howard Little Dog.

**COUNT IV**
**DECLARATORY JUDGMENT**
**THIRTEENTH CAUSE OF ACTION**

56. This is a cause of action pursuant to §27-8-101, et seq., MCA, for judgment declaring that §25-9-411, MCA, which purports to limit the total award for noneconomic damages to plaintiffs in medical negligence lawsuits to $250,000, does not apply to the claims of Memory Heisel, individually and as Personal Representative of the Estate of Howard H. Little Dog, Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, by and through their natural mother, Memory Heisel, which such claims are stated more fully above; and in the alternative and to the extent that §25-9-411, MCA is found to be applied to this action, a judgment declaring that §25-9-411, MCA violates the Montana Constitution as follows:

   a. The arbitrary damage limitation in §25-9-411 violates the right to trial by jury guaranteed by Article II, §26 of the Montana Constitution;

   b. The arbitrary damage limitation in §25-9-411 violates the right to full legal redress set forth in Article II, §16 of the Montana Constitution;

   c. The arbitrary damage limitation in §25-9-411 violates the right to equal protection guaranteed by Article II, §4 of the Montana Constitution;

   d. The arbitrary damage limitation in §25-9-411 violates the right to substantive due process set forth in Article II, §17 of the Montana Constitution;

   e. The arbitrary damage limitation in §25-9-411 violates the prohibition contained in Article II, §31 of the Montana Constitution, prohibiting laws purporting to grant special privileges or immunities; and

   f. The arbitrary damage limitation set forth in §25-9-411 violates the principal of separation of powers established by Article III, §1 of the Montana Constitution.

57. All persons who have any claim or interest which would be affected by such declaration are parties to this litigation and such declaration will not prejudice the rights of persons who are not parties to these proceedings. The Attorney General of the State of Montana has been served with a copy of these proceedings, pursuant to § 27-8-301, MCA.

## CLAIMS FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

1. The Plaintiff Memory Heisel, as Personal Representative of the Estate of Howard Little Dog, demands judgment against the Defendants with an award of compensatory damages, costs, interest, prejudgment interest and for any other relief as this Court deems proper and just as to the First, Second, Fifth, Sixth and Seventh Causes of Action; and for declaratory judgment as to the Seventh Cause of Action, that §25-9-411, MCA does not apply to this action and to the extent that it does, the arbitrary damage limitation set forth in § 25-9-411, MCA is unconstitutional and void.

2. The Plaintiffs Lucretia Little Dog, Alicia Little Dog and Justin Little Dog, minors, by and through their natural mother, Memory Heisel, demand judgment against the Defendants with an award of compensatory damages, costs, interest, prejudgment interest and for any other relief as this Court deems proper and just as to the Third, Fourth and Seventh Causes of Action; and for declaratory judgment as to the Seventh Cause of Action, that §25-9-411, MCA does not apply to this action and to the extent that it does, the arbitrary damage limitation set forth in § 25-9-411, MCA is unconstitutional and void.

/ / /

/ / /

/ / /

DATED this 30th day of March, 2007.

| | |
|---|---|
| RANDY K. DIX LAW OFFICE | BARER LAW OFFICES |
| By: /s/ Randy K. Dix | By: /s/ Michael G. Barer |
| Randy K. Dix | Michael G. Barer |
| 80 South Warren | #18 Sixth Street North, Suite 200 |
| Helena, MT 59601 | Great Falls, Montana 59401 |
| Telephone: (406) 443-4667 | Telephone: (406) 771-8800 |
| Facsimile: (406) 443-4669 | Facsimile: (406) 771-7227 |
| Attorneys for Plaintiffs | Attorneys for Plaintiffs |

## CERTIFICATE OF SERVICE BY MAIL

I HEREBY CERTIFY that, on the 30th day of March, 2007, a copy of the foregoing document was served on the following persons by the following means:

   1,2   CM/ECF
   ___   Hand Delivery
    3    Mail
   ___   Overnight Delivery Service
   ___   Fax
   ___   E-Mail

1. Clerk, U.S. District Court

2. George F. Darragh Jr.
   Assistant U.S. Attorney
   Attorney for Defendant

3. Montana State Attorney General
   Mike McGrath
   P. O. Box 201401
   Helena, MT 59620-1401

/s/ Wendy Lee
Wendy Lee, Legal Assistant to
Michael G. Barer, Esq.